**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| M.A., *et al.*, | ) | CASE NO. 4:26-cv-00415 |
| | ) | |
| Petitioner, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| v. | ) | |
| | ) | |
| CRYSTAL MOLINA, *et al.*, | ) | **ORDER** |
| | ) | |
| Respondents. | ) | |
| | ) | |

Before the Court is Petitioner's emergency petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition").  (ECF No. 1).  For the reasons stated below, the Court **GRANTS** the Petition.  Petitioner shall be immediately released to the custody and care of his mother, Mahali Amador.  The parties shall file a joint status report by close of business on March 20, 2026 confirming such release.

## I.    FACTUAL BACKGROUND

Petitioner is a native of Honduras.  (ECF No. 1, PageID #3).  In October 2022, Petitioner entered the United States at fourteen years old after he allegedly escaped labor trafficking in Honduras.  (*Id.*).  Upon entry into the United States, Petitioner was detained and held in immigration custody.  (*Id.*).  While Petitioner was detained, his mother, Mahali Amador ("Ms. Amador"), applied to be Petitioner's sponsor to effectuate his release.  (*Id.*).  Petitioner was only detained for eleven days before the Office of Refugee Resettlement ("ORR") granted Ms. Amador's sponsorship application and released Petitioner to her care and custody in Austin, Texas. (*Id.*).  Petitioner remained in Ms. Amador's custody from November 7, 2022, until April 25, 2025, when he was arrested for unauthorized use of a vehicle.  (ECF No. 9-1, PageID #125).

1

Petitioner pled guilty to a misdemeanor for unauthorized use of a vehicle and the trial court sentenced him to time served.  (*Id.*).  Upon release, the Department of Homeland Security ("DHS") apprehended Petitioner and transferred him to ORR custody around July 24, 2025.  (ECF No. 1, PageID #3; ECF No. 9-1, PageID #125).  Petitioner has been detained since.  As of the date of this order, Petitioner has been detained for roughly eight months.

On February 18, 2026, Petitioner filed the Petition.  (ECF No. 1).  Petitioner asks the Court "to remedy his continued unlawful detention" based on violations of his rights to procedural and substantive due process, the Trafficking Victims Protection Reauthorization Act, 8 U.S.C. § 1232 ("TVPRA"), and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*. ("APA").  (*Id.*).  As of the date of the Petition, Petitioner had a pending asylum application.  (ECF No. 1, PageID #6).

On March 2, 2026, Respondents Crystal Molina, Monia Velarde, Robert F. Kennedy, Jr., and Angie Salazar, in their official capacities, and Erich Dumbeck, Executive Director of Abraxas Ohio (collectively, "Respondents"), filed a return of writ in response to the Petition.  (ECF No. 9). On March 5 and 6, 2026, Petitioner filed a reply in support of the Petition and a reference list for redacted material.  (ECF Nos. 10, 11).

## II.    LEGAL FRAMEWORK

In 2002, Congress enacted the Homeland Security Act, 6 U.S.C. § 279 ("HSA") which abolished the Immigration and Naturalization Service ("INS") and transferred responsibility for the care and placement of minors from INS to ORR, an office within the Department of Health and Human Services ("HHS").  6 U.S.C. §§ 279(a), (b)(1)(A), (g)(2); *Singh v. Stevens,* No. 3:26-cv-133, 2026 WL 456489, at *1 (N.D. Ohio Feb. 18, 2026).  Congress subsequently passed the TVPRA to prevent trafficking of any unaccompanied alien child ("UAC") in the United States and ensure safe return to their country of nationality or last habitual residence.  8 U.S.C. § 1232(a)(1). The HSA defines a UAC as "a child who –

2

(A) has no lawful immigration status in the United States;

(B) has not attained 18 years of age; and

(C) with respect to whom—

(i) there is no parent or legal guardian in the United States; or

(ii) no parent or legal guardian in the United States is available to provide care and physical custody."

6 U.S.C. § 279(g)(2).

"The detention of unaccompanied alien children is governed by the TVPRA, which does not mandate detention."  *Singh*, 2026 WL 456489, at *1 (quoting *R.D.T.M. v. Wofford*, No. 25-cv-01141, 2025 WL 2686866, at *4 (E.D. Cal. Sept. 18, 2025)).  Instead, the TVPRA requires that ORR place an UAC "in the least restrictive setting that is in the best interest of the child."  8 U.S.C. § 1232(c)(2)(A).  ORR may consider, *inter alia*, whether the UAC poses a danger to himself, the community, or is a flight risk.  *Id.*  Removal proceedings commence after the UAC is in ORR custody.  8 U.S.C. § 1232(a)(5)(D).

Pending removal, ORR may release an UAC to an approved sponsor that is "capable for providing for the child's physical and mental well-being" by determining, "at a minimum … verification of the [sponsor's] identity and relationship with the child, if any, as well as an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child."  8 U.S.C. § 1232(c)(3)(A).  A home study must be completed under certain circumstances, such as when an UAC "is a victim of a severe form of trafficking in persons."  8 U.S.C. § 1232(c)(3)(B).

In April 2024, ORR implemented the Unaccompannied Children Program Foundational Rule ("Foundational Rule"), 45 C.F.R. Part 410, which similarly required ORR to place an UAC in the least restrictive setting that is in the best interest of the child.  45 C.F.R. § 410.1103(a).  ORR

published policies and procedures that govern suitability assessments of potential sponsors that provided additional detail on the sponsorship process.  *See* ORR UAC Bureau Policy Guide ("UAC Policy Guide"), §§ 2.2, 2.4–2.5, https://acf.gov/orr/policy-guidance/unaccompanied-children-bureau-policy-guide (last visited Mar. 17, 2026).  Pursuant to the UAC Policy Guide, a potential sponsor must provide documentation of their identity, address, relationship to the child they seek to sponsor, proof of income, proof of social security number or individual taxpayer identification number.  *Id.* at § 2.2.4.  To do so, potential sponsors must follow specific criteria, including presenting acceptable identification documents and undergoing a background check to prove their identity, submitting a DNA test to prove their relationship to the UAC, interviews, and in some cases, a home study to confirm their suitability as a sponsor.  *Id.*  The Foundational Rule requires ORR to adjudicate completed sponsorship applications from close relatives, such as parents or legal guardians, within ten days, unless the case involves an unexpected delay, such as the need for a home study.  45 C.F.R. § 410.1205(b).

### III.    ANALYSIS

#### A.    Procedural Due Process

Petitioner asserts that Respondents' delay in resolving Ms. Amador's sponsorship application deprives Petitioner of his fundamental interests in freedom from detention and family integrity in violation of the right to procedural due process.  (ECF No. 10, PageID #136).  Respondents deny that Petitioner's procedural due process rights were violated.  (ECF No. 9, PageID #13).  Respondents argue that Ms. Amador declined to retrieve Petitioner upon his release, and it was only after Ms. Amador declined to accept him that Petitioner was remanded to ORR's care and custody.  (*Id.*).

4

The Fifth Amendment provides that "no person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  The Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zavydas v. Davis*, 533 U.S. 678, 693 (2001).  To determine whether a due process violation exists, the Court must apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *See Escobar-Ruiz v. Raycraft*, No. 1:25-cv-1232, 2025 WL 3039255, at *6 (W.D. Mich. Oct. 31, 2025) (citing *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020)) (applying the *Mathews* balancing test to immigration detention).  Under the *Mathews* framework, the Court must consider: "(1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest [and the value of any additional or substitute procedures]; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail."  *Singh*, 2026 WL 456489, at *7 (citing *Escobar-Ruiz*, 2025 WL 3039255, at *6).  All three factors weigh in favor of Petitioner and demonstrate that Respondents violated his right to procedural due process.

### 1. Factor 1: Private Interest Affected by Official Action

Petitioner argues that Respondents' conduct infringed on two private interests: Petitioner's interest in freedom from detention and his interest in family integrity.  (ECF No. 1, PageID #15).  Each alleged private interest will be addressed in turn.

### a. Freedom from detention

Petitioner argues that he has a substantial liberty interest in freedom from detention regardless of immigration status.  (*Id.*).  Respondents argue that Petitioner does not have an interest in freedom from confinement under *Reno v. Flores*, 507 U.S. 292 (1993), "especially [] when federal law *requires* that a child be placed in ORR's custody and may not be released to anyone …

5

unless and until ORR determines it may do so safely." (ECF No. 9, PageID #116).  Petitioner responds that *Flores* does not stand for the proposition that Respondents contend; *Flores* affirms a child's interest in freedom from detention and being in the custody of a parent.  (ECF No. 10, PageID #137–38).

The Court agrees that Respondents' reliance on *Flores* is misplaced.  As Petitioner points out, and as the court stated in *A.N.P.S. v. Salazar*, No. 25-cv-14778, 2025 WL 3707333, at *7 (N.D. Ill. Dec. 22, 2025), "*Flores* does not bear the weight Respondents place on it."  In *Flores*, the Supreme Court held that "[w]here a juvenile has no available parent, close relative, or legal guardian, where the government does not intend to punish the child, and where the conditions of governmental custody are decent and humane, such custody surely does not violate the Constitution." *Flores*, 507 U.S. at 303.  *Flores* "concerns UACs who are (1) detained for the first time and (2) do not have a readily available parent, close relative, or legal guardian to take custody of them." *A.N.P.S.*, 2025 WL 3707333, at *7.  Here, Petitioner is challenging his second detention and seeks to be released to his mother, Ms. Amador, whom the government already approved to be a suitable sponsor in 2022.  (ECF No. 1, PageID #6).  Petitioner is not detained for the first time, and he has a readily available parent, Ms. Amador, to take custody of him.  Thus, the Court agrees that "*Flores* thus says little if anything about what procedural due process someone in Petitioner's circumstances must be afforded, and it certainly does not hold that a UAC may not obtain due process under the *Mathews* test[.]" *A.N.P.S.*, 2025 WL 3707333, at *7.

Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  Freedom from detention is one of the "most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).  Although

6

minors, unlike adults, are "always in some form of custody," minors still "retain a strong interest in being free from unnecessary government interference with their liberty." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1195 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) (citing *Schall v. Martin*, 467 U.S. 253, 265 (1984)); *J.E.C.M. v. Marcos*, 689 F. Supp. 3d 180, 195, 198 (E.D. Va. 2023) (explaining that age "does not negate a minor's interest in being free from restraints").

Several courts have found that, at least when a parent is requesting reunification, the burden should be on ORR to show why continued custody of the child is appropriate, rather than placing the burden on the parent. *See Santos v. Smith*, 260 F. Supp. 3d 598, 613 (W.D. Va. 2017) ("[W]hen a parent is requesting reunification, the burden should be on ORR to show why its continued custody of a UAC is appropriate, rather than placing that burden on the parent."); *Beltran v. Cardall*, 222 F. Supp. 3d 476, 485 (E.D. Va. 2016) (finding sponsorship process inadequate because "[a]t no point was the onus on ORR to justify its deprivation of Petitioner's fundamental parental rights"). This is particularly true when the child was living with the sponsor prior to detention. *See E.H.C.F. by Contreras Flores v. Kennedy,* No. 3:25-cv-2142, 2026 WL 145229, at *12 (D. Conn. Jan. 16, 2026) ("In this case, the Court agrees that ORR's procedures improperly place the burden on Ms. Contreras Flores, especially in light of the uncontested fact that E.H.C.F. was living with her prior to his arrest.").

Here, Petitioner, even as a non-citizen, has a private interest in freedom from detention. Petitioner's mother, Ms. Amador, has complied with each of ORR's requests to determine her current sponsorship suitability, received a positive home study recommendation, and was a prior sponsor to Petitioner. Even more, on February 13, 2026, the Young Center for Immigrant Children's Rights submitted a Best Interests Determination that recommended Petitioner be

7

released to his mother immediately to protect his best interests.  (ECF No. 1-3; ECF No. 10-6, PageID #169).  Yet Respondents still allege that the vetting process is ongoing, nearly eight months after detention and Ms. Amador submitted a sponsorship application.  Respondents have proffered no adequate justification to continue detention.  *See Santos*, 260 F. Supp. 3d at 613.[1]

### b.  *Family Integrity*

Petitioner also asserts an interest in family integrity.  (ECF No. 1, PageID #16).  Petitioner argues that he is entitled to "the fundamental right to be raised and nurtured by his mother without the government's deliberate and unlawful interference."  (ECF No. 10, PageID #138). Respondents argue that any "amorphous" interest Petitioner retains in family unity must still give way to the governmental interest of investigating situations which could give rise to neglect or abuse under 8 U.S.C. § 1232(c)(3)(A).  (ECF No. 9, PageID #116).  Respondents claim that Petitioner's mother declined to be reunited with him and only began the sponsorship process after he was taken into ORR custody, thereby creating an *ex-post* effort to create an "overgeneralized family unit right."  (*Id.*).  As such, Respondents caution the Court against substituting its policy preferences for the standard applicable to protecting the Due Process Clause.  (*Id.*).  Petitioner responds that his right to family integrity is not "amorphous"; it is specific and concrete.  (ECF No. 10, PageID #138).  Petitioner argues that he has not been placed in the least restrictive setting that is in his best interest: with his mother.  (*Id.*).  Petitioner asserts that he is instead facing

---

[1] To the extent that Respondents base their justification to continue detainment on Petitioner's alleged misconduct while in custody, even if true, it does not provide Respondents with cart blanche authority to detain Petitioner.  ORR submitted a home study request for Ms. Amador's residence and the home study provider produced a final, positive report.  (*Id.*).  Both the home study and the final report occurred after Petitioner's alleged misconduct that Respondents now rely on to justify Petitioner's continued detention.  But this finding cuts against any potential justification for continuing his detention.  Indeed, Petitioner was under the care and custody of Ms. Amador as an approved sponsor for nearly two and a half years prior to the instant detention and the home study has shown that Ms. Amador can provide adequate care to Petitioner.

indefinite and unlawful detention and family separation under the guise of careful deliberation of the sponsor determination process. (*Id.* at PageID #139).

Respondents rely on several cases for the proposition that the right to "family unity" in the context of civil immigration detention does not exist, including *Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210 (4th Cir. 2019). (ECF No. 9, PageID #116). But Respondents mischaracterize *Reyna*'s holding. A narrow reading of *Reyna* merely states that there is a not a *substantive* due process right to family unity to limit detainee transfers, which in turn caused the petitioner's procedural due process claim to fail. *Reyna*, 921 F.3d at 210. There, the court considered whether a transfer of two non-citizen, parent detainees held in ICE custody from a detention center in Virginia to a detention center in Texas without notice or an opportunity to be heard violated the procedural due process rights of the detainees and their non-detained children. *Id.* The court was "unable to find a substantive due process right to family unity in the context of immigration detention pending removal." *Id.* at 210–11. Although Petitioner's claims do not concern the deportation or detention of non-citizen parents, Respondents argue that an interest in family unity cannot exist here.

The Court is unpersuaded. As the court in *J.E.C.M.* stated, the *Reyna* court couched its holding "in the context of immigration detention pending removal." *J.E.C.M.*, 689 F. Supp. 3d at 196. In this case, the Court is not faced with an immigration detention pending a removal proceeding. Nor is Petitioner's mother in detention. Petitioner is presently being held in a facility in a state other than where Ms. Amador resides, and the fact of Petitioner being transferred there is not the issue before this Court. Further, in the present case, Ms. Amador submitted a sponsorship application, and ORR is tasked with placing Petitioner in the least restrictive setting that is in his best interest under 8 U.S.C. § 1232(c)(2)(A). *Id.* It was already determined that Ms. Amador was

9

an adequate sponsor for Petitioner in 2022.  Now, Petitioner is simply asserting a due process right to family unity to allow for reunification with his mother under the same type of sponsorship he was previously afforded.  *See Lucas R.*, No. 18-cv-5741, 2022 WL 2177454, at \*25 (C.D. Cal. Mar. 11, 2022) (analyzing whether a private interest exists under the *Mathews* balancing test and explaining that potential parent sponsors have the strongest interest in familial association); *Santos*, 260 F. Supp. 3d at 612; *Beltran*, 222 F. Supp. 3d at 482; *J.E.C.M.*, 689 F. Supp. 3d at 197 ("The Court agrees with the reasoning of *Santos*, *Beltran*, and *Lucas*, and finds that the interest of family unity is implicated by ORR's reunification process as it applies to Category 1 and 2 sponsors, and finds that UCs and their proposed Category 1 and 2 sponsors share a constitutionally cognizable interest in family unity.").  The Court finds that Petitioner has a constitutionally cognizable private interest in freedom from detention and family unity.  Factor one weighs in favor of Petitioner.

2. *Factor Two: Risk of Erroneous Deprivation of Private Interest, Additional or Substitute Procedural Safeguards*

Petitioner argues that Respondents' delay in rendering a decision on Ms. Amador's sponsorship application has deprived Petitioner of his rights to freedom from confinement and family unity.  (ECF No. 1, PageID #15–16).  Specifically, Petitioner alleges that Respondents have (1) ignored ORR's prior determination that Ms. Amador was a suitable sponsor, (2) delayed responding to Ms. Amador's inquiries regarding the process, (3) delayed initiating the procedures to complete a home study and DNA testing, (4) refused to acknowledge that Petitioner is a member of the *Angelica S.* class, and (5) compelled Ms. Amador to apply for an individual tax identification number.  (*Id.* at PageID #16–17).

Respondents argue that there is only a limited risk of erroneous deprivation given that the government asked Ms. Amador to retrieve Petitioner, and she declined.  (ECF No. 9, PageID

#115).[2] Petitioner responds that regardless of whether Ms. Amador did not retrieve him, his claim "concern[s] ORR's systematic delay of his subsequent release and reunification with his mother." (ECF No. 10, PageID #140). Petitioner further relies on publicly available statistics which suggest that Petitioner has been in ORR custody for "over 100 days beyond ORR's average length of detention in fiscal year 2025, and about 200 days beyond ORR's average length of detention in fiscal year 2024." (*Id.*); *see also* U.S. Department of Health & Human Services, *Unaccompanied Children: Data* (Mar. 11, 2026), https://acf.gov/orr/about/ucs/facts-and-data. Even more concerning, Petitioner alleges further deprivation of Petitioner's rights is imminent: Petitioner's eighteenth birthday is impending, and ORR will lose jurisdiction over him. (*Id.*).

Several courts have agreed that "significant" and "unexplained delay[s] in responding to [a proposed sponsor's] unification request" violates due process. *See Lucas R. v. Becerra*, 2022 WL 2177454, at *27; *J.E.C.M.*, 689 F. Supp. 3d at 197 ("The deprivations of plaintiffs' interests can therefore occur not just when ORR makes a final determination denying a reunification application, but also before making a final decision if there are prolonged, unreasonable delays in releasing a minor."); *see also Maldonado v. Lloyd*, No. 18-cv-3089, 2018 WL 2089348, at *1 (S.D.N.Y. May 4, 2018) (finding procedural process violation based where child and mother were separated for eleven months due to ORR's delay in processing mother's sponsorship application); *Santos v. Smith*, 260 F. Supp. 3d at 613–14 (finding procedural due process violation where child

---

[2] Respondents attempt to shield themselves from any alleged delay in the processing of Ms. Amador's sponsor application by asserting that Ms. Amador refused to retrieve Petitioner. But Petitioner's rendition of the events tells a much different, and more troubling story. Petitioner explains that, when the Office of Immigration, Customs, and Enforcement ("ICE") contacted Ms. Amador, ICE advised her not to come after she shared fear due to lack of permanent immigration status. (ECF No. 10-5, PageID #159, ¶ 3). Petitioner further inquired of whether another person with permanent status could retrieve Petitioner, to which ICE answered no. (*Id.* at ¶ 4). Petitioner's fear is well-taken; ICE has recently detained a parent without permanent immigration status when the parent attempted to retrieve their child from custody. *See E.H.C.F*, 2026 WL 145229, at *1 (granting a preliminary injunction and ordering the child to be released to parent after ICE detained both when parent attempted to retrieve child from police custody).

and mother were separated for seventeen months due to ORR's delay in processing mother's sponsorship application); *but see Beltran*, 222 F. Supp. 3d at 486 (likely no due process violation based on "delay alone" when only two months passed between application submission and denial).

In *Santos*, the court granted immediate release of a seventeen-year-old Honduran citizen from ORR to the care and custody of his mother. *Santos*, 260 F. Supp. 3d at 600. Applying the *Mathews* balancing test, the court held that the child had a private interest in freedom from detention and family unification, and that "a more fulsome process … would considerably lessen the risk of erroneous deprivation." *Id.* at 612. The court was particularly troubled by the lengthy delay in processing the mother's reunification request because it caused the child to wait—while in detention and away from his mother—for a period of seventeen months for a decision on his mother's sponsorship application and received no explanation for such delay. *Id.* at 613–14. During this time, the child's psychological condition worsened, which the court recognized was likely attributable in part to his prolonged detention and separation from his mother. *Id*. Ultimately, the Court concluded that "the very significant, unexplained delay in responding to the unification request" was "extremely troubling and conclud[ed] that the delay, even without other procedural deficiencies, violated due process." *Id.*

The Court applies the same line of reasoning here. Petitioner is a seventeen-year-old Honduran citizen who seeks reunification with his mother. (ECF No. 1). Petitioner has been in custody since July 24, 2025, a period of nearly eight months. (*Id.* at PageID #3). Despite Ms. Amador taking the necessary steps to become Petitioner's sponsor (for a second time) soon after he entered ORR custody in July 2025, there has been a lengthy delay in processing with little explanation as to why. *See Santos*, 260 F. Supp. 3d at 613–14; (*Id.* at PageID #7–10).

At several points, Respondents' actions, or lack thereof, delayed Ms. Amador's sponsorship application. For example, Ms. Amador and an alternate caregiver provided their fingerprints to ORR on September 6, 2025 and September 12, 2025, respectively. (*Id.* at PageID #8). ORR ran Ms. Amador's background check promptly and it returned with no issue on September 15, 2025. (*Id.*). However, ORR failed to run the alternate caregiver's background check until November 12, 2025, and at that time, Ms. Amador's background check expired. (*Id.*). ORR subsequently ran a second background check on Ms. Amador on December 9, 2025, which revealed no issues. (*Id.*). Given the delay, it took ORR nearly three months to process the required background checks. Other instances include ORR's delay in obtaining Petitioner's DNA sample, which did not occur until February 12, 2026, even though Petitioner was in custody since July 24, 2025. (*Id.* at PageID #10). Ms. Amador has also had trouble communicating with Respondent Molina regarding the sponsorship application, which may have led to further delay. (*Id.* at PageID #8).

As previously stated, ORR already determined that Ms. Amador was a suitable sponsor. (*Id.* at PageID #6). This troubles the Court as to the delay of Ms. Amador's pending sponsorship application, especially regarding additional DNA testing that was previously verified. Respondents allege that no procedural due process violation exists because "the sponsor suitability determination process … continues to progress" and "ORR continues to work towards … making a determination regarding whether Petitioner's mother is capable of providing for his physical and mental well-being, and whether his release would result in danger to her or to the community." (ECF No. 9, PageID #106, 116).

Respondents do not explain what additional processes or determinations are necessary to decide whether Ms. Amador "is capable of providing for his physical and mental well-being, and whether his release would result in danger to her or to the community." (*Id.* at PageID# 106).

Respondents admit that they have received Ms. Amador's sponsorship application, fingerprint results, DNA results, and a home study report which favors her sponsorship request.  (*Id.* at PageID #105).  According to the ORR Policy Guide, a home study is defined as:

> An in-depth investigation of the potential sponsor's ability to ensure the child's safety and well-being initiated by ORR as part of the sponsor suitability assessment. A home study includes an investigation of the living conditions and standard of care that the unaccompanied alien child would receive if released and placed with a particular potential sponsor. The process includes interviews with the potential sponsor and other household members. A home study is conducted for any case where it is required by the TVPRA, mandated by ORR sub-regulatory guidance, and for other cases at ORR's discretion, including for those in which the safety and well-being of the unaccompanied alien child is in question.

*See* UAC Policy Guide: Guide to Terms, https://acf.gov/orr/policy-guidance/unaccompanied-children-program-policy-guide-guide-terms (last visited Mar. 17, 2026).  The purpose of a home study is to (1) "Assess the potential sponsor's ability to meet the child's needs;" (2) "Educate and prepare the potential sponsor for the child's release; and" (3) "Corroborate information gathered on the sponsor assessment."  UAC Policy Guide, § 2.4.2.  A home study includes interviews of household members, a home visit, and a written report regarding the case worker's findings.  *Id.*  The written report "may identify areas where additional services, resources, or information are needed to support a successful sponsorship" before placement.  *Id.* "The final recommendation must present a comprehensive and detailed assessment of the sponsor's ability to care for the needs of the child and identify any information that emerges regarding the sponsor, the sponsor's household or the child."  *Id.*

On December 18, 2026, ORR submitted a home study request for Ms. Amador's residence. (ECF No. 1, PageID #9).  On January 9, 2026, the home study provider produced a final, positive report.  (*Id.*).  Both the home study and the final report occurred after the alleged inappropriate behaviors Respondents rely upon to justify Petitioner's continued detention.  As such, at the time

14

of the home study and positive recommendation, ORR had information about Petitioner and his behaviors while in ORR custody, and the case manager still submitted a positive recommendation. Based on the policies governing home studies, it is reasonable to believe that the case worker "[a]ssess[ed] [Ms. Amador's] ability to meet [Petitioner's] needs" and "[e]ducated and prepare[d] [Ms. Amador] for [Petitioner's] release," regardless of any alleged incidents that occurred while Petitioner was detained.  *See* UAC Policy Guide, § 2.4.2.

Respondents have no viable explanation as to the aforementioned delays.  They only state that additional "vetting procedures" are being completed, which fails to comport with Petitioner's procedural due process rights.  *See E.H.C.F.*, 2026 WL 145229, at *12 ("[ORR's] vague explanation as to the delay—that additional vetting is required and that an 'investigation' as to safety concerns needs to be completed—does not comport with basic procedural due process."). Even if the Court were to accept Respondents' position that Petitioner's behaviors since detention have caused delay in the processing of Ms. Amador's sponsorship application for ORR to determine whether Petitioner presents a danger, there is no way to determine whether Petitioner's condition has worsened in large part due to his detention.[3]  Therefore, the Court finds that Petitioner faces a risk of erroneous deprivation of his interests in family unity and freedom from detention which could be remedied through additional procedures that ensure a timely decision on

---

[3] As the court recognized in *Santos*, a child who remains in prolonged detention and separated from his mother may experience a worsened psychological condition.  *Santos*, 260 F. Supp. 3d at 613–14 ("Perhaps if reunification had been addressed more expediently, O.G.L.S. would not have had some of the behavioral problems that he has had, which ORR is now relying upon to deny reunification.").  Petitioner has long suffered from anxiety and depression, which likely stems from his alleged experience escaping labor trafficking in Honduras.  (ECF No. 1, PageID #12). Petitioner was hospitalized due to suicidal ideation and evidence of self-harm in November 2025.  (*Id.*).  While in the custody of Ms. Amador, Petitioner saw a therapist and wishes to continue doing so.  (*Id.*).  While in detention, and like the child in *Santos*, Petitioner's condition has worsened.  Petitioner has been involved in at least one physical altercation and may be under the use of illicit substances.  The Court notes that the concerns Respondents focus on, including Petitioner's alleged illicit drug use, absconding, and aggressive behaviors, appear to be limited to his time in detention.  Aside from his misdemeanor unauthorized use of a vehicle, Respondents have not put forth any reports of such incidents while Petitioner was in Ms. Amador's custody for two and a half years.  It may well be that Petitioner's behaviors are attributable to his continued and prolonged detention.

Ms. Amador's sponsorship application and foster increased transparency regarding the process. Factor two weighs in favor of Petitioner.

> 3. *Factor Three: Government Interest, Fiscal and Administrative Burdens of Additional or Substitute Procedures*

Respondents argue that Petitioner's due process rights have not been violated because the government has an "interest in investigating situations that may give rise to neglect and abuse." (ECF No. 9, PageID #116).  Respondents support this position with Petitioner's alleged misconduct, including "a significant history of absconding to obtain and use illicit substances and served a criminal sentence."  *Id.*  Petitioner responds that Respondents fail to elaborate on any allegations or concerns that Ms. Amador may neglect or abuse Petitioner.  (ECF No. 10, PageID #141).  It is undisputed that the government has a significant interest in ensuring it only releases an UAC when consistent with its statutory mandate, along with protecting Petitioner and the community.   However, Respondents have failed to identify any burden that would be imposed if ORR provided more detailed information on the process or completed the process within the ten days, as required under its own policies.  *See* 45 C.F.R. § 410.1205(b).  Instead, Respondents only rely on Petitioner's alleged misconduct, which the Court previously determined has little weight given the positive home study recommendation provided in support of Ms. Amador's sponsorship application.  Therefore, the government has failed to provide the fiscal or administrative burdens of additional or substitute procedures, such as more detailed information on the process or completion within the ten days prescribed under the Foundational Rule.  Factor three weighs in favor of Petitioner.

Based on the analyses above, each of the *Mathews* factors weigh in Petitioner's favor. Petitioner's procedural due process rights have been violated due to his prolonged detention attributable to the delay in processing Ms. Amador's sponsorship application, and habeas relief is

warranted.  *See Maldonado*, 2018 WL 2089348, at *1 (finding procedural due process violation and granting habeas relief under 28 U.S.C. § 2241 with order to immediately release child to custody of his mother); *Santos*, 260 F. Supp. 3d at 600 (same); *A.N.P.S.*, 2025 WL 3707333, at *1 (finding procedural due process violation and granting habeas relief under 28 U.S.C. § 2241 with order to immediately release child to custody of his adult cousin).

## IV.    CONCLUSION

Accordingly, the Court hereby **GRANTS** Petitioner's emergency petition for a writ of habeas corpus.  (ECF No. 1).  The Court hereby **ORDERS** Petitioner's immediate release to the custody and care of his mother, Mahali Amador.  The parties shall file a joint status report by close of business on March 20, 2026 confirming such release. [4]

**IT IS SO ORDERED.**

Date: March 17, 2026

_____
**CHARLES E. FLEMING**
**UNITED STATES DISTRICT JUDGE**

---

[4] Because the Court grants the petition based on the mentioned due process violation, the Court need not address Petitioner's remaining arguments for release.